HERBERT SANDFORD, Sr., RESPONDENT, v. THE CHANAZ COMPANY, APPELLANT.

Argued October 23, 1936—Decided February 2, 1937.

For the appellant, *Kellogg & Chance.*

For the respondent, *David Cohn* and *Milton Goldinger.*

The opinion of the court was delivered by

PARKER, J. The plaintiff while attending to his duties as an employe in the yard of a factory building in Paterson was severely injured by the fall of a heavy roll of silk which was being raised to an upper floor of the building by an outside elevator. The roll of silk, with certain other articles, had been loaded on the elevator by employes of the defendant; and in the complaint negligence was alleged, first, because the said employes, though knowing that the elevator if too heavily loaded was liable to start up of itself, nevertheless did load it too heavily. Secondly, because in loading it the roll of silk in question had been placed in an insecure position and was liable to be jolted off by the movement of the elevator, which in fact happened.

The evidence taken at the trial was voluminous and the plaintiff had a verdict of $15,000 and the judgment thereon is before us on this appeal.

There are sixty-six grounds of appeal but we find it unnecessary to consider more than comparatively few of them as we conclude that, although the question of liability was for the jury, the judgment is vitiated because of illegal rulings on evidence going particularly to the *quantum* of damages.

The present action was commenced on April 22d, 1936, and the trial began on June 24th of that year. There had previously been a proceeding in workmen's compensation, the result of which is not before us, and a previous suit apparently based on the accident, but against another defendant, which had been tried in April, 1936. The date of commencing that suit and its result are not before us. These facts are mentioned here because of their relevancy to the rulings on evidence now to be considered.

According to the evidence, the roll of silk fell on plaintiff's head and, as already noted, he appears to have been very seriously injured. At the trial his claims for damages, among other things, were that his eyesight, his power of hearing, and his nervous constitution, all allegedly normal before the accident, had been permanently impaired, and in support of these claims several medical experts were examined for the plaintiff, and one or more for the defendant. A Dr. Quimby, a specialist called in by plaintiff's counsel, made an examination on February 29th, 1936; a Dr. Reinhorn, another specialist called in by the plaintiff's family physician, made his first examination on October 25th, 1935, the accident having taken place on January 25th, 1935. We do not find any other statement in the testimony that Dr. Reinhorn was called in for the purpose of testifying later as an expert, but the examination of witness by both counsel shows quite clearly that both understood this to be the fact and undertook to govern themselves accordingly. Dr. Quimby made an examination of the plaintiff's eyesight, and also of his hearing, in the customary manner, making certain tests requiring the patient to state how well he sees certain objects under certain conditions and how well he hears. Dr. Quimby's results as to eyesight were twenty-forty for the right eye and twenty-fifty for the left eye, and in regard to hearing he testified that the

right ear showed forty-eight per cent. loss in air conduction and seventy-two per cent. loss in bone conduction; in the left ear forty-nine per cent. and seventy-six per cent., respectively. He expressly stated that the results of these tests necessarily depended upon statements made by the patient at the time of examination as to what he could see and hear. Dr. Reinhorn, similarly a specialist in eye, ear, nose and throat, although instructed by the court to eliminate all subjective symptoms and to limit himself to objective findings, testified as to the results of ear tests by whispering, conversational voice, tuning fork, &c. He was asked by plaintiff's counsel to "state again" at what distance there was a loss of hearing in the plaintiff. Defendant's counsel objected and on the ground that the doctor's examination was based on what he was told by plaintiff with reference to his hearing. The court said that there was nothing to indicate that. Counsel for defendant asked leave to interrogate him on the point but was overruled, the question was re-read and the court said, "of course, that requires the co-operation of the plaintiff; that is your objection. Mr. Tyne: Yes. The court: The same as you objected to before. I will allow it and allow you an exception." The witness was then asked the question, "what was your diagnosis, doctor? Mr. Tyne: I object to the diagnosis. It must be limited purely to objective findings." After a short colloquy, the court said to the witness: "You can rely in no way upon subjective symptoms; you must rely on the objective symptoms." The witness answered, "a very important part of our examination is the patient's ability to hear whisper and to hear conversation voice. That is a form of test. We use that as a form of test." Again the court asked, "Q. It is limited to the findings. Nothing about history, but his response in the test where you require his co-operation, as saying, 'do you hear me?' and he shakes his head or says, 'yes,' or something like that. A. Only we don't make it as direct as that. Q. How else would you make it? A. I ask him a question. Q. And he answers? A. And he answers it." Counsel for plaintiff then went on and put the following question: "Bearing in mind that examination and bearing in mind your observations during the course of your examina-

tion, what have you to say to the court and jury as to your diagnosis of this condition? Mr. Tyne: My objection is directed to this testimony if it is based on something that the plaintiff, Mr. Sandford, told him on which the doctor in turn bases his opinion. It is a self-serving declaration. The court: All right. I will overrule the objection and allow you an exception."

We think it is perfectly plain that almost throughout the examination of these medical experts there was a violation of the general rule that where the statements of the party are made not to his own medical adviser for the purpose of proper medical treatment, but are made to medical experts for the purpose of enabling that expert to give his opinion evidence in a court of law, they are obnoxious to the rule excluding hearsay evidence. It has already been noted that both Dr. Quimby and Dr. Reinhorn were examined on both sides in the aspect not of medical advisers to the patient for the purpose of improving his physical condition, but of experts intended to be called to testify upon the trial of a case either pending or about to be begun. Such testimony without more has always been held incompetent in this state. *State* v. *Gedicke*, 43 *N. J. L.* 86, 88; *Consolidated Traction Co.* v. *Lambertson*, 60 *Id.* 452; *State* v. *Gruich*, 96 *Id.* 202.

The rule laid down by the late Mr. Justice Dixon in the Lambertson case, *supra*, has been uniformly followed by our courts. After recognizing the admissibility of declarations of a patient to his physician for the purpose of treatment he goes on to say: "But when such declarations are made not for the purpose of treatment, but for the purpose of leading the physician or surgeon to form an opinion to which he may testify as a witness for the declarant, not only is this reason for credibility absent but instead self-interest becomes a motive for distortion, exaggeration and falsehood. Hence it is the better conclusion that declarations made under such circumstances are not competent evidence on behalf of the declarant."

The Supreme Court case of *Hutchinson* v. *Jersey Central Traction Railroad Co.*, 1 *N. J. Mis. R.* 278, is precisely in point as regards the circumstances of the examination with

the sole exception that the witness had made the examination on the day just before the trial, but this is immaterial. In *Koske* v. *Delaware, Lackawanna and Western Railroad Co.,* 104 *N. J. L.* 627, it appears on page 630 that the plaintiff had consulted the physician as a private patient. In *Cattania* v. *Fleckenstein,* 105 *Id.* 174, the hearsay element was not present.

To the suggestion that where a plaintiff on the witness stand testified that he told the examining expert thus and so, such expert may couple such statement so made to him with his objective examination, the answer in the present case simply is that the plaintiff gave no such evidence; and consequently we are not called upon to deal with any such phase of the matter.

The examination of witnesses was conducted in a rather loose way, with a great deal of interruption and colloquy; and doubtless at some stage an answer may have been allowed to come in without proper objection and exception, but notwithstanding this, we find sufficient in the case regularly before us to come to the conclusion that harmful error was committed in the reception of such illegal evidence, and is properly before us.

There was also error in the examination of a witness for the defendant, a Dr. Van Winkle. He testified that he was a specialist in eye, ear, nose and throat, and that on October 29th, 1935, some nine months after the accident, he made an examination of the plaintiff at his office. He was asked on direct examination: "*Q*. At the time of that examination, did Mr. Sandford give you a history of his injury?" This was objected to and, after some little colloquy, the objection was sustained and exception entered. We think it was clearly error to exclude the question, as the defendant was naturally entitled to any admissions that the plaintiff may have made in the interview with Dr. Van Winkle not only as to the extent of his injuries but the happening of the accident. Dr. Van Winkle was called as an expert witness as to the extent of the injuries, but that did not disqualify him from testifying, as any other ordinary witness at the instance of the opposite party might testify, to any relevant statement that

Mr. Sandford may have made at the time of the examination. The exclusion of such evidence was also erroneous.

We conclude, therefore, that there must be reversal and a remand for a new trial.

*For affirmance*—THE CHANCELLOR, LLOYD, WOLFSKEIL, COLE, JJ. 4.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, RAFFERTY, JJ. 11.