118 N.J. Super. 503 (1972)
288 A.2d 863
JOSEPHINE TRAMUTOLA AND FRED N. TRAMUTOLA, HER HUSBAND, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
FRANK BORTONE, M.D., DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND HAZEL OLGA ELWOOD AND JEROME J. ROSE, CO-EXECUTORS OF THE ESTATE OF BENJAMIN ELWOOD, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND THE BERTHOLD S. POLLAK HOSPITAL FOR CHEST DISEASES, DEFENDANT-RESPONDENT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1971.
Decided March 20, 1972.
*508 Before Judges GOLDMANN, COLLESTER and MINTZ.
Mr. Daniel K. Van Dorn argued the cause for defendant-appellant and cross-respondent Bortone (Messrs. Gleeson, Hansen & Pantages, attorneys).
Mr. Joseph T. Ryan argued the cause for defendant-appellants and cross-respondents, the executors of the estate of Benjamin Elwood (Mr. William J. Cleary on the brief; Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
Mr. Morris Brown argued the cause for plaintiffs-respondents and cross-appellants Tramutola (Mr. Gene O'Donnell on the brief; Messrs. Wilentz, Goldman & Spitzer, attorneys).
No brief was filed on behalf of defendant-respondent The Berthold Hospital for Chest Diseases.
The opinion of the court was delivered by COLLESTER, J.A.D.
This case involves appeals and a cross-appeal from a judgment entered in favor of plaintiffs in a medical malpractice action.
On May 25, 1966 Josephine Tramutola brought an action to recover damages for personal injuries against Dr. Frank Bortone, Hazel Olga Elwood and Jerome J. Rose, co-executors of the estate of Dr. Benjamin Elwood, deceased (hereafter Elwood), and The Berthold S. Pollak Hospital for Chest Diseases (hereafter Pollak Hospital). Her husband, Fred Tramutola, joined in the action, per quod. At the close of all the evidence and before summations the hospital settled plaintiffs' claim for $7,500. The trial judge did not reveal the settlement to the jury and it returned a verdict in favor of *509 Josephine Tramutola for $65,000 and in favor of her husband for $5,000 against all three defendants.
Following the trial, motions were brought on behalf of Elwood for a judgment n.o.v., a new trial, or to reduce the judgment pro rata by reason of plaintiffs' prior settlement with the hospital; on behalf of Bortone for a new trial as to damages only or to settle the form of the judgment, and on behalf of plaintiffs to limit the deduction from the judgment against Elwood and Bortone to $10,000. The trial judge denied the motions and ordered that judgments be entered in favor of plaintiffs and against Elwood and Bortone, the judgments against each to be in the amount of $23,333.33. Elwood and Bortone appealed and plaintiffs cross-appealed.
Most of the evidence adduced at the trial is uncontradicted. While Josephine Tramutola was being treated for a kidney condition at the Bayonne Hospital in November 1959 an X-ray revealed the existence of a shadow in her right lung. She was referred to Dr. Elwood who thereafter treated her for the lung condition. Following a series of tests at Pollak Hospital it was determined that plaintiff was suffering from "bilateral cylindric bronchiectasis, stenosis of the right middle lobe bronchus." Dr. Elwood referred her to Dr. Bortone, a thoracic surgeon, who on April 28, 1960 performed a right middle lobectomy upon her at the hospital. Post-operative X-rays were taken of Mrs. Tramutola while she was still in the hospital. Within a week after her discharge plaintiff was again treated by Dr. Elwood. She continued to visit him for post-operative treatment, at first monthly and later biannually. She continually complained of a sharp pain in her chest above the breast. Dr. Elwood took X-rays and fluoroscopes on each visit, but plaintiff was never informed of the results. The doctor indicated that the pain was muscular and in time would clear up. He prescribed medication. Plaintiff was treated by Dr. Elwood until the fall of 1964, more than four years after the operation. She testified that she was in constant pain and was nervous and concerned about her condition.
*510 In 1965, after Dr. Elwood's death, plaintiff consulted Dr. Theodore Talbot in Staten Island. He took X-rays of plaintiff and informed her that there was a metallic object in her chest. It was determined that the object was part of a surgical needle which was used during the lobectomy at Pollak Hospital in April 1960. As a result Mrs. Tramutola was admitted to St. Vincent's Hospital in Staten Island for further tests. Following a conference with Dr. J. Maxwell Chamberlain, a New York City thoracic surgeon, Dr. Talbot recommended that no surgical operation be performed to remove the needle because it did not warrant the risk. Mrs. Tramutola testified that it is necessary for her to see Dr. Talbot once every six months to learn whether the needle had moved; that she continues to have pain in her chest, is very nervous and bothered by sleeplessness, and is required to take medication for pain.
(At oral argument the court was shown the X-rays taken at the hospital following the lobectomy. The presence of part of the surgical needle was evident even to our untrained eyes.)
The principal factual issue was whether plaintiff's pain was caused by the needle in her chest or was the result of the spreading of the ribs during the lobectomy in 1960. Dr. Talbot, whose testimony was taken by deposition, said that the area where the needle was imbedded was insensitive and he did not think pain could emanate from it. In his opinion the pain was due to the lobectomy. He testified that it is necessary for plaintiff to be X-rayed periodically to ascertain whether the needle had moved.
On the other hand, Dr. David Graubard, plaintiff's medical expert, testified that the pain was caused by the needle. He said that the X-rays taken at Pollak Hospital following the operation revealed that the front portion of a surgical needle used for suturing was located in the vicinity of the right bronchus in the hilar region. He testified that the needle had become encapsulated by scar tissue, causing the surrounding tissue to become nonelastic and rigid. He said that whenever *511 plaintiff took a deep breath or made certain movements of her body the rigid tissue produced a pulling sensation on other organs in the area, causing pain. He stated the pain was not related to the lobectomy and that plaintiff would suffer pain for the rest of her life.
The only defense witness was Dr. Henry Reich, who examined plaintiff on behalf of Dr. Bortone in November 1968. After examining the X-rays taken at the hospital he conceded that part of a surgical needle must have broken off during the operation and became buried in the hilar region. He said it had encapsulated and would not cause pain. He testified that his examination of plaintiff revealed no abnormal physical findings, no anxiety or nervousness, and was of the opinion that she had suffered no ill effects from the encapsulated needle.
The Elwood executors contend that the court erred in denying their motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. It is argued that no expert testimony was adduced to show that Dr. Elwood in any way deviated from accepted medical standards in his post-operative treatment of plaintiff; that even assuming the X-rays taken by him revealed a foreign object in plaintiff's chest, there was no proof of any medical standard that would require a doctor to tell the patient about it. It is also argued that there was no proof by competent medical evidence that plaintiff sustained damage because of Dr. Elwood's nondisclosure.
The negligence charged against Dr. Elwood in this case was his failure to disclose to plaintiff that a foreign object was left in her body during the operation performed by Dr. Bortone. Where a surgeon knows or has reason to believe that he left a foreign object in his patient's body during an operation he has a duty to disclose the facts to his patient, absent any sound medical reason for not doing so. See Annotation, "Malpractice  Foreign Objects," 10 A.L.R.3d, 9, § 6 at 37 (1966); Dietze v. King, 184 F. Supp. 944 (E.D. Va. 1960); Taylor v. Milton, 353 Mich. 421, 92 *512 N.W.2d 57, 60 (Sup. Ct. 1958); Ernen v. Crofwell, 272 Mass. 172, 172 N.E. 73, 74 (Sup. Jud. Ct. 1930); Benson v. Dean, 232 N.Y. 52, 133 N.E. 125, 126 (Ct. App. 1921). A physician entrusted with the post-operative care of a patient, and who has reason to believe that a foreign object was left in the patient's body during the operation, has a similar duty of disclosure. See Jackson v. United States, 182 F. Supp. 907, 911 (D. Md. 1960); You Goo Ho v. Dr. Edmund T.K. Ing, 43 Haw. 289 (1959).
It is well settled that when a physician treats a patient he has an obligation to exercise the degree of care, knowledge and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in his field, and failure to have and use such skill and care, resulting in injury or damage to the patient, constitutes negligence. Evidence of a deviation from accepted medical standards must ordinarily be provided by expert testimony. Schueler v. Strelinger, 43 N.J. 330, 344-345 (1964). However, a well recognized exception dispenses with the need for such testimony where the facts are such that it may be said, looking at the matter in the light of the common knowledge and experience of laymen, that there has been a lapse from the standard. Jones v. Stess, 111 N.J. Super. 283, 287 (App. Div. 1970); Sanzari v. Rosenfeld, 34 N.J. 128, 141 (1961).
In the instant case there was evidence that X-rays taken at the hospital immediately following the operation revealed the presence of the needle in plaintiff's chest; that on each of her visits to Dr. Elwood over a four-year period following the operation he took X-rays and fluoroscoped her chest, but never informed her that a needle was lodged in her body. The alleged malpractice of Dr. Elwood was his negligence in either not discovering the needle in plaintiff's chest or, having observed it, failing to inform Mrs. Tramutola of its presence so that she could have had it removed shortly after the lobectomy and before it became encapsulated by scar tissue.
The issue of Dr. Elwood's negligence was not related to technical matters peculiarly within the knowledge of a *513 medical practitioner, and there was no proof of any sound medical reason for nondisclosure of the fact that the needle was lodged in plaintiff's chest. In the light of the proofs we are satisfied that the jury was competent to resolve the question of Dr. Elwood's negligence without expert testimony.
We find no merit in the argument that there was no proof by competent medical evidence that plaintiff sustained damage by reason of Dr. Elwood's nondisclosure. She testified that she has suffered and still suffers pain in her chest. Dr. Graubard testified that the pain was caused by the needle which had become encapsulated by scare tissue. He said the encapsulation caused surrounding tissue to be nonelastic and rigid, and this resulted in pain when plaintiff made certain movements of her body. We think it is implicit that if plaintiff had early on been informed by Dr. Elwood of the presence of the needle in her body before it became encapsulated she could have submitted to surgical treatment for its removal and thus eliminated the pain.
The Elwood executors also contend the trial judge erred in denying their motion to dismiss the complaint because it was not filed until June 1966, six years after the lobectomy and well beyond the two-year statute of limitations. In Fernandi v. Strully, 35 N.J. 434, 450 (1961), the court laid down the rule that in medical malpractice actions, where a foreign object is left in a patient's body during the course of a surgical operation, the period of limitations begins to run when the patient knows or had reason to know about the foreign object and the existence of the cause of action based upon its presence. Plaintiff did not know or have reason to know that the needle was lodged in her chest until 1965. She did not sleep on her rights but brought suit in 1966, soon after learning of its presence. Under the rationale of Fernandi v. Strully, supra, her action against Elwood was not barred by the statute of limitations.
Defendants Bartone and Elwood claim that the judge erred in permitting Dr. Lawrence Kaplan, a neuropsychiatrist, to testify as to the history plaintiff related to him during *514 his neuropsychiatric examination. The physician did not treat her but examined and diagnosed her condition at the request of her counsel. The judge allowed him, over objection, to give the history because Mrs. Tramutola had already testified thereto.
The testimony indicated that a major part of a neuropsychiatric examination is based on the history given by the patient to the physician in order that an evaluation of her mental state and nervous condition can be made. Dr. Kaplan testified that at the conclusion of his examination he diagnosed plaintiff's condition as a chronic anxiety and depressive reaction caused by the difficulties she had following the operation, and in particular her knowledge that there was a needle fragment in her lung.
The history given by plaintiff to Dr. Kaplan consisted substantially of the medical treatment she received following the lobectomy, her eventual discovery through X-rays that the needle had been left in her lung, and the pain and nervous condition she claimed to have suffered since the operation.
Defendants argue that plaintiff's declarations to Dr. Kaplan were inadmissible hearsay because he was not a treating physician but had examined her solely for the purpose of testifying as an expert.
It is well settled that the declarations of a patient as to his previous symptoms, pain or physical sensations, made to a physician consulted for purposes of treatment, are admissible in evidence. Evidence Rule 63(12) (b); Cestero v. Ferrara, 57 N.J. 497, 501 (1971). However, it has long been the rule in this State that declarations made, not for the purpose of treatment but for the purpose of leading the physician to form an opinion to which he may testify as a witness for the declarant, are not competent evidence on behalf of the declarant. Consolidated Traction Co. v. Lambertson, 60 N.J.L. 452, 454 (E. & A. 1897).
Plaintiff argues that Dr. Kaplan's testimony as to her declarations was admissible because it was not offered as *515 proof of the truth of her statements but to lay the groundwork for his expert medical opinion as to the nature of her nervous condition. She relies on the comment to Evidence Rule 63(12) (b) in the Report of the New Jersey Supreme Court Committee on Evidence (March 1963), which states:
It is to be noted that (b) does not apply in cases where the declarant has gone to a physician only for diagnosis and not for treatment, e.g., to a physician whose function it is to testify. Such a physician would be permitted to testify that he had based his opinion on such a statement [of past symptoms, pain and suffering], but the statement itself would not be admissible as independent substantive evidence under Rule 63(12)(b). In cases where the doctor uses a statement made to him as a basis for testimony, the statement is not offered for its truth, but for the purpose of explaining and justifying the expert opinion. (at 174-175)
In denying defendants' motion for a new trial on the ground that Dr. Kaplan's testimony of the history given him was erroneously admitted into evidence, the trial judge indicated that he had relied on the comment in the report of the Supreme Court Committee, referred to above, which was prepared before the Rules of Evidence became effective on September 11, 1967. We note that comment to § 63(12)-4 to Evidence Rule 63 (12) (b) in the 1972 Annotations prepared by the Rules of Court Review Commission of the New Jersey Legislature does not incorporate the language of the 1963 comment of the Supreme Court Committee.
Courts in some jurisdictions support plaintiff's argument that a physician who has been consulted solely for the purpose of qualifying as an expert witness on behalf of a patient may testify, over a hearsay objection, as to the patient's statements concerning his past pain, suffering and subjective symptoms, not as proof of the truth of the statements but merely to show the basis of the physician's opinion as to the nature of the injuries or illness. See Annotation, "Patient's Statements  Admissibility," 37 A.L.R.3d 778, § 7(b) at 823 (1971). The great majority of courts hold to the contrary. Ibid., § 7(a) at 820.
*516 The rationale for the New Jersey rule excluding such testimony is that declarations made to an examining physician to qualify him as an expert witness do not have the trustworthiness of declarations made to a treating physician because the self-interest of the declarant may become a motive for distortion, exaggeration and falsehood. Consolidated Traction Co. v. Lambertson, supra, at 455; Sanford v. The Chanaz Co., 117 N.J.L. 485, 488 (E. & A. 1937). Accordingly, we conclude that the trial court erred in permitting Dr. Kaplan to testify as to the declarations made by plaintiff of her past medical history.
The question presented is whether such testimony was so prejudicial as to warrant a reversal and a new trial. We think not. Mrs. Tramutola preceded Dr. Kaplan on the witness stand and had testified to her past symptoms, medical history and current complaints. Her husband and daughter subsequently testified to their observations of plaintiff's physical and emotional condition. Dr. Talbot's deposition concerning plaintiff's prior medical history and emotional condition was read to the jury, without objection. In substance, Dr. Kaplan's testimony of plaintiff's history was a repetition of what had already been testified to by plaintiff and was subsequently corroborated by other witnesses.
In Consolidated Traction Co. v. Lambertson, supra, the court concluded that while the examining physician had improperly testified concerning declarations made to him by plaintiff, his testimony was not a ground for reversal where other evidence showed that such declarations were true. See also Baumhoer v. McLaughlin, 205 S.W.2d 274, 280 (Mo. Ct. App. 1947). We conclude that the admission of Dr. Kaplan's testimony of plaintiff's declarations was at most harmless error.
Both Bortone and Elwood contend that the trial judge's comments on the evidence in his charge were prejudicially weighted in favor of plaintiff and, further, that he erred in his instructions to the jury on the question of damages. We *517 have carefully reviewed the charge and find no merit in these contentions.
Elwood argues that the trial judge erred by not interrogating the jury about the nature of its verdict. The record indicates that immediately following the return of the verdict the judge asked, "Is there anything further you want to say?" The jury foreman responded, "The percentages, you want?" The judge replied, "No." The jury was then polled and unanimously agreed with the verdict as reported by its foreman.
We find no merit in Elwood's argument that the judge should have asked the foreman to explain what he meant by his reference to "percentages." The charge directed the jury to return its verdict in lump sums in the event it found that plaintiffs were entitled to damages. The question of "percentages" was not raised during the trial and was not a matter for determination by the jury. Theobold v. Angelos, 40 N.J. 295, 305 (1963).
Elwood also alleges that the court erred in concealing from the jury the fact that plaintiffs had settled their claims against Pollak Hospital for $7,500 after the conclusion of the testimony but before the summations. He relies on Theobold v. Angelos, supra. In that case the court stated that where multiple tortfeasors are or may be jointly responsible for an individual's injuries and losses, and one or more of them effect a settlement in exchange for a covenant not to sue, the fact of the settlement, but not the amount paid, is generally brought to the attention of the jury at the trial. The court said that when the jury has such knowledge speculation is avoided as to the reason for the absence from the proceedings of an additional potentially liable person. The court further said that if the jury decides that the defendant was guilty of negligence which was solely or partly responsible for the injuries and losses sustained, it should return a verdict for the total sum which represents reasonable compensation therefor; that the computation of compensation must be made without regard to the number of *518 defendants remaining in the case, or the number of defendants originally in the case but who had made settlements with plaintiff  and without any deduction based upon what the jurors thought that plaintiff might or should have received in those settlements.
In our view the trial judge did not err in not revealing the fact of the settlement to the jury. The testimony had been presented, only summations remained. To have advised the jury of the settlement might well have caused speculation by it and adversely affected plaintiff or the remaining defendants. Here all parties, including Pollak Hospital, presented their summations, after which the case was sent to the jury. We find no prejudicial error in the trial judge's action.
Defendant Bortone claims that the damages totaling $70,000 awarded by the jury were excessive. His motion for a new trial on that ground was denied by the trial judge. We have reviewed the evidence as to the pain and suffering endured by Mrs. Tramutola following the lobectomy. There was medical testimony that she suffered and will continue to suffer physical pain as well as psychiatric injury. We will overturn a jury verdict on the ground of excessiveness only with reluctance and never except in a clear case. Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330 (1970); Andryishyn v. Ballinger, 61 N.J. Super. 386, 393-394 (App. Div. 1960), certif. den. Andryishyn v. Bayonne Block Co., 33 N.J. 120 (1960). We conclude that the verdicts were not excessive; the denial of the new trial motion was not a miscarriage of justice. R. 4:49-1.
We come next to the question of apportionment of damages among the joint tortfeasors. Following the verdict a motion was made for settlement of the form of the judgment. The trial judge concluded that Pollak Hospital, a county hospital, did not come within the purview of N.J.S.A. 2A:53A-8, which provides that a nonprofit hospital shall not be liable to respond in damages for negligence to a beneficiary in an amount in excess of $10,000. Pollak Hospital having settled *519 plaintiffs' claims for $7,500, the judge apportioned the damages as follows:

To Josephine Tramutola:
 1/3 by Dr. Bortone  $21,666.66
 1/3 by Dr. Elwood  $21,666.66
 1/3 by County of Hudson [Pollak Hospital], satisfied
 by settlement.
To Fred Tramutola:
 1/3 by Dr. Bortone  $1,666.66
 1/3 by Dr. Elwood  $1,666.66
 1/3 by County of Hudson [Pollak Hospital], satisfied
 by settlement.

We find no merit in Elwood's contention that an agency relationship existed between Dr. Elwood and Dr. Bortone, constituting them a single tortfeasor and thus liable for only one-half of the damages awarded, the other half being satisfied by the $7,500 settlement paid by the hospital. There was no evidence of an agency relationship adduced at the trial.
Plaintiffs, in their cross-appeal, assert the trial judge erred in ruling that the liability of Pollak Hospital was not limited to $10,000 by N.J.S.A. 2A:53A-8 and therefore erred in the apportionment of damages abong the tortfeasors. The hospital is a nonprofit institution created and maintained by Hudson County for the treatment of lung diseases under N.J.S.A. 30:9-46 et seq. We are satisfied that it is entitled to the benefits of the statute (N.J.S.A. 2A:53A-8 and 10) limiting liability in negligence cases to $10,000. See Muntz v. Newark City Hospital, 115 N.J. Super. 273, 277 (App. Div. 1971).
We further conclude that the trial judge's apportionment of damages was erroneous. If no settlement had been effected with the hospital, the pro rata apportionment of the $70,000 awarded would have been $10,000 charged against the hospital, the remaining $60,000 being equally divided between defendants Elwood and Bortone. If the judge's apportionment of one-third of the damages ($23,333.33) against *520 the hospital is permitted to stand, plaintiffs will suffer a loss of $15,833.33 instead of only $2,500 resulting from their settlement with the hospital.
The Joint Tortfeasor's Law, N.J.S.A. 2A:53A-1 et seq., was intended to relieve tortfeasors of an injustice as among themselves. It was not designed to prevent a full recovery by the victim unless he voluntarily invited a reduction by settling with a tortfeasor for less than the tortfeasor's pro rata share. Judson v. Peoples Bank and Trust Co., 25 N.J. 17, 38 (1957). Here plaintiffs settled with the hospital for $7,500, $2,500 less than the hospital's limited statutory liability of $10,000. There is a strong policy in favor of settlements. A hospital, whose liability is limited to $10,000, should not be precluded from settling a claim against it for a lesser amount. A claimant should not be subjected to an unfair apportionment of his damages because he settled with a hospital for less than the limit of the hospital's statutory liability. Defendants Bortone and Elwood are not entitled to a windfall which would reduce their pro rata shares of liability for damages because of the settlement effected in this case.
The $70,000 verdict should be reduced by $10,000, the full amount of the hospital's liability for damages. The remaining $60,000 should be apportioned between Bortone and Elwood, the remaining joint tortfeasors.
The judgment of liability on the part of defendants is affirmed. The matter is remanded with directions to modify the apportionment of damages in harmony with this opinion.
GOLDMANN, P.J.A.D. (concurring).
I agree with the majority opinion in all respects except one. Although recognizing that we are bound by the rule annunciated by our then highest court in 1897 in the case of Consolidated Traction Co. v. Lambertson, 60 N.J.L. 452, 454 (E. & A. 1897), I am of the opinion that the time has come to reexamine the viability of that rule in the light of our present more liberal treatment of the rules of evidence. I am in accord with the *521 conclusion reached by the New Jersey Supreme Court Committee on Evidence in its 1963 comment to Evidence Rule 63 (12) (b), quoted in the majority opinion.
In my view, the trial judge, relying upon that comment, correctly denied defendants' motion for a new trial made on the ground that Dr. Kaplan's testimony as to the history given him by Mrs. Tramutola had erroneously been admitted into evidence. Dr. Kaplan could not have formed an opinion as to plaintiff's mental state and psychiatric condition without being informed in at least some detail as to her prior history and complaints. His situation was not that of a treating doctor who can base an opinion on, at least, objective physical symptoms. Indeed, Dr. Kaplan said that his evaluation necessarily had to be based on his discussion with Mrs. Tramutola, and that discussion had to include her account of her past medical history.