120 N.J. Super. 129 (1972)
293 A.2d 431
WILLIAM WINTERS AND ALICE WINTERS, HIS WIFE, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS
v.
CITY OF JERSEY CITY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1972.
Decided July 28, 1972.
*130 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. Alan L. Krumholz argued the cause for appellants and cross-respondents (Messrs. Pearlman, Krumholz & Horn, attorneys).
Mr. Daniel K. Van Dorn argued the cause for respondent and cross-appellant (Messrs. Gleeson, Hansen & Pantages, attorneys).
PER CURIAM.
Plaintiffs appeal from an order amending a judgment which set aside a jury verdict in the amount of $45,000 for William Winters and $15,000 for Alice Winters and reduced the damages awarded to $7,500 for William Winters and $2,500 for Alice Winters. Defendant cross-appeals *131 from the judgment and the denial of its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
Plaintiff William Winters brought an action against defendant to recover damages for injuries sustained when he fell out of bed while a patient at the Jersey City Medical Center, a hospital owned and operated by the defendant municipality. He alleged that his fall was caused by the negligent failure of hospital employees to elevate the guard rails on the side of his bed. His wife, Alice Winters, joined in the action per quod. The jury returned a verdict in favor of William Winters for $45,000 and in favor of Alice Winters for $15,000. The trial court denied defendant's motion for a judgment notwithstanding the verdict and for a new trial. However, it granted a motion to limit liability to $10,000 under the provisions of N.J.S.A. 2A:53A-8 and reduced the damages awarded as above set forth.
The principal issue raised on this appeal is whether the statute limiting the amount of damages to $10,000 for negligence to a beneficiary of a nonprofit hospital applies where the hospital is owned and operated by a municipal corporation. The relevant sections of the statute, in pertinent part, are as follows:

N.J.S.A. 2A:53A-7
No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such non-profit corporation, society or association; * * *

N.J.S.A. 2A:53A-8
Notwithstanding the provisions of the foregoing paragraph, any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $10,000., * * *

*132 N.J.S.A. 2A:53A-10
This act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes.
The trial judge in holding that the limited liability prescribed in N.J.S.A. 2A:53A-8 was applicable to a municipal hospital pointed out that Jersey City Medical Center was operated by a Board of Managers pursuant to the authority of N.J.S.A. 30:9-13 and 14; that it is required under N.J.S.A. 30:9-16 to be devoted exclusively to the treatment and the relief of the indigent sick and disabled of Jersey City, and the expense of its maintenance is defrayed from the annual tax levy. He stated that it was a nonprofit organization operated exclusively for hospital purposes. The judge described the history of the legislation including the ad interim statute enacted in 1958 (L. 1958, c. 131) and the statute of 1959 (L. 1959, c. 90) following the Supreme Court decisions which abolished the common law doctrine of charitable immunity, namely, Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958); Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958), and Benton v. Young Men's Christian Ass'n of Westfield, 27 N.J. 67 (1958). He noted that during the legislative hearing conducted by the New Jersey Assembly in 1958 to consider enactment of the ad interim statute granting limited liability to hospitals there was no distinction made between municipal and private nonprofit hospitals. Applying principles of statutory construction the judge concluded that the objective of the legislation was to provide a limited right of recovery for injured beneficiaries against a hospital whether it was a private nonprofit corporation or a municipal hospital organized exclusively for hospital purposes.
Plaintiffs concede that Jersey City Medical Center is operated on a nonprofit basis exclusively for hospital purposes and that it is obligated to treat the indigent of Jersey *133 City. However, they argue that the provisions of N.J.S.A. 2A:53A-8 is not applicable to a hospital operated by a municipal corporation and that the trial judge erred in reducing the damages awarded by the jury to an aggregate amount of $10,000. They allege that the law which permitted and upheld the immunity of charitable institutions before it was swept aside by the Supreme Court in 1958 related to private charitable institutions and not those operated by municipalities and that the Legislature enacted N.J.S.A. 2A:53A-7 et seq. to restore limited immunity to such institutions. They assert that a municipality is not a non-profit corporation within the meaning of the statute and that it is not organized exclusively for hospital purposes.
While the issue involved in this case has not been squarely decided by our appellate courts we discussed it by way of dictum expressed in Muntz v. Newark City Hospital, 115 N.J. Super. 273 (App. Div. 1971). We said:
Finally, a word with respect to plaintiff's contention that the hospital does not fall within the purview of N.J.S.A. 2A:53A-8, et seq. Plaintiff contends the hospital is an agency of the city and cannot be categorized as a nonprofit corporation or a charitable institution. We disagree. Unquestionably, the Legislature intended to grant limited immunity to hospitals not operated for profit. N.J.S.A. 2A:53A-8 and 10. No sound reason exists for holding that a city hospital, organized as Newark City Hospital was under N.J.S.A. 30:9-13 et seq. for treating "indigent sick and disabled," is not entitled to the benefits of the statute. See Kress v. Newark, 9 N.J. Super. 70 (App. Div. 1950), rev'd on other grounds 8 N.J. 562 (1952), and Kent v. County of Hudson, 102 N.J. Super. 208, 219-220 (App. Div. 1968), aff'd 53 N.J. 546 (1969), wherein it is clearly inferrible that the statute applies to a county hospital. (At p. 277)
We agree with the rationale of the trial judge in the instant case, that the broad objective of the Legislature in the enactment of N.J.S.A. 2A:53A-8 was to limit the liability of all nonprofit hospitals, both private and municipally owned and operated. As the trial judge indicated, to hold otherwise would produce the anomalous result that a patient injured by reason of negligence in a nonprofit hospital *134 would be limited to a recovery not exceeding $10,000. However, a patient who by pure chance is taken to a municipal hospital devoted exclusively to the treatment and relief of the indigent sick and disabled of such city, and therein injured, could recover damages without any limitation. We do not believe that this was the intention of the Legislature.
We are mindful of the impressive dissent filed by Judge Lynch in this case. Nevertheless, we are inclined to adhere to our earlier ruling in Tramutola v. Bortone, 118 N.J. Super. 503, 509 (App. Div. 1972), certif. granted 60 N.J. 513 (1972), in which we adopted the rationale expressed in Muntz v. Newark City Hospital, supra, and inferred in Kent v. County of Hudson, supra. In any event, as Judge Lynch indicates, the issue here presented will undoubtedly be resolved by our Supreme Court in Tramutola.
We hold that the trial judge properly reduced the damages awarded to plaintiffs to the aggregate amount of $10,000.
On the cross-appeal defendant first contends that its motion for a judgment n.o.v. should have been granted because plaintiffs failed to produce expert testimony as to the standard of hospital care in the use of guard rails on a patient's bed and the deviation from that standard by the hospital employees. We find the contention to be lacking in merit. Where the issue of negligence is not related to technical matters peculiarly within the knowledge of medical practitioners and where looking at the matter in the light of the common knowledge and experience of laymen reasonable men could conclude there has been a deviation from the norm or standard, expert testimony is not required. Sanzari v. Rosenfeld, 34 N.J. 128, 141 (1961); Tramutola v. Bortone, supra, 118 N.J. Super. at 512.
In the instant case there was evidence that William Winters was suffering from a serious attack of emphysema; he was elderly and infirm. Nurse Holmes, who had worked on the ward for more than three years prior to the accident, *135 testified that for a man of Winter's age and condition the side rails of the bed should be up. There was no necessity for the production of expert testimony.
Defendant also claims the damages awarded by the jury were excessive and a new trial should have been granted as to all issues. We have reviewed the record and conclude that based on the evidence presented the trial judge properly denied the motion for a new trial. We are satisfied that the verdicts were not excessive. The denial of the new trial motion was not a miscarriage of justice. R. 4:49-1.
Affirmed.
LYNCH, J.A.D. (concurring in part and dissenting in part).
I respectfully dissent from that part of the majority opinion which holds that the "limited immunity" statute (N.J.S.A. 2A:53A-8, applicable to the operation of hospitals), applies to the defendant City of Jersey City. In all other respects, I concur.
The foundation of defendant's argument as to "limited immunity" is the decision in Muntz v. Newark City Hospital, 115 N.J. Super. 273 (App. Div. 1971), which was followed in Tramutola v. Bortone, 118 N.J. Super. 503 (App. Div.) certif. granted 60 N.J. 513 (1972).
In Muntz, the court stated that there was "no sound reason" for holding that a "city hospital [sic], organized * * * for treating `indigent sick and disabled,' is not entitled to the benefits of the statute." [115 N.J. Super. at 277].
With all due respect to my colleagues in Muntz, Tramutola, and here, as well as to the trial judge herein, I conceive that there are many  and compelling  reasons why the "limited immunity" statute should not be construed as applying to a "city hospital" [sic] organized (as are Jersey City's and Newark's) under N.J.S.A. 30:9-13 et seq. The court in Muntz relied on the authority of Kress v. Newark, 9 N.J. Super. 70 (App. Div. 1950), rev'd on other grounds 8 N.J. 562 (1952), and Kent v. County of Hudson, 102 N.J. Super. 208, 219-220 (App. Div. 1968), *136 aff'd 53 N.J. 546 (1969). I submit that Muntz, Kress, and Kent, singly or in combination, do not have the persuasive quality in defendant's favor which is ascribed to them. In any event, now that certification has been granted in Tramutola, the opportunity is presented for our differing views to be resolved by the Supreme Court.
Some preliminary, but fundamental, observations are in order. In my view, it is a basic misconception of the issue, and an irrelevancy, to assert that the "city hospital" here involved shall have the benefit of the statutory immunity. The "city hospital" is not a defendant. Indeed, it cannot be, and it is not here sued because it is not an entity having the capacity to be sued. The statutory scheme is such that, when a municipality operates a hospital, as Jersey City does here, the municipality shall "* * * be sued in all courts and elsewhere, in all manner of actions, suits, complaints and demands whatsoever growing out of the creation and maintenance of such hospital * * *." N.J.S.A. 30:9-16 (emphasis added). The question, then, is not whether the "city hospital" is protected by the statutory immunity involved, but whether the defendant municipality, Jersey City, comes within the immunity cloak of the statute. And this is not merely a semantic difference. As will be seen below, defendant's status as a municipal governing body is significant in the interpretation of the meaning of the statute.
Another fundamental error in defendant's argument, as I see it, is the contention that, because it operates a hospital for the "indigent sick and disabled" it is, therefore, a "charity" worthy of charitable immunity under the statute. On the contrary, for a defendant to be protected by the statute it must come "* * * within the highly special immunity afforded to associations `organized exclusively for religious, charitable, educational or hospital purposes." Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 331 (1970), (emphasis added). As it was said in Fulmer v. United *137 States, 133 F. Supp. 775 (D. Neb. 1955), in construing Nebraska law exempting "a non-profit charitable corporation from tort liability":
Neither in its constitutional erection nor in its operation of its Veterans' Administration hospitals is the United States a non-profit charitable corporation. And that fact matters considerably, for what is exempted from liability is not the business of hospitalization but the non-profit charitable corporation; and it [the corporation] is exempted precisely because it is a non-profit charitable corporation, not because it operates a hospital. [Id. at 788; emphasis added].
Thus the issue is reduced to whether the defendant municipality here comes within the narrow class defined in the statute and not whether it is to be immune because it operates a hospital from which the indigent sick and disabled benefit.
In seeking the intent of the Legislature as to N.J.S.A. 2A:53A-8, the following considerations are relevant: (1) the statutory language, (2) the legislative history, (3) the policy reasons which inspired the doctrine of "charitable immunity" at common law and whether they apply to defendant municipality today, (4) the relevant policy considerations as to immunity weighed against compensating an injured person for his damages, (5) the express treatment of the question of immunity by the Legislature when it intends that it apply, and (6) the relevant case law.

(1)

The statutory language of N.J.S.A. 2A:53A-7, 8.
Where the wording of a statute is clear and explicit, the court is not permitted to indulge in any interpretation other than that called for by the express words set forth. Duke Power Co. v. Patten, 20 N.J. 42, 49 (1955). The language of this statute is clear. It extends total immunity to a "* * * nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes * * *," where the suit is by a beneficiary of such *138 an organization. (Section 7) (Emphasis added). By Section 8, it limits the immunity granted by Section 7 so that in a suit against a "non-profit corporation, society or association organized exclusively for hospital purposes," a "beneficiary" may recover up to $10,000 damages. (Emphasis added).
The words describing those organizations upon which the statute confers either total or limited immunity ("nonprofit corporation," etc.) have developed an established connotation in our law, i.e., a private charity which depends on charitable contributions and whose funds are held in trust solely for the purpose of the charity. The statutory language is derived directly from the cases which conferred immunity upon private charities at common law. A municipality is not such a corporation, society or association. It is organized under, and has the powers and duties provided for, in N.J.S.A. 40:42-1 et seq. I agree with what was said in White v. Charity Hospital of La. in New Orleans, 239 So.2d 385 (Ct. App. La. 1970):
The moribund chimera of charitable immunity has no application to a government hospital. The anachronistically-named Charity Hospital does not dispense charity but rather renders services to which qualified citizens are entitled as a matter of legal right; and it is supported not by alms but by taxes. Public hospitals, like public schools, are not charitable or eleemosynary institutions. [Id. at 386].
Nor has the tort liability of a municipality (when it has existed under our law in that area) depended on whether the person injured is a "beneficiary * * * of the works of such nonprofit corporation, society or association", or whether the person is one "unconcerned in and unrelated" thereto, as that distinction is carried into the statute, Section 7. Those words, in this statute, are taken almost verbatim from cases which relate to private charities only. Lindroth v. Christ Hospital, 21 N.J. 588 (1956); Rose v. Raleigh Fitkin-Paul Morgan, &c., Foundation, 136 N.J.L. 553 (E. & A. 1948); Kolb v. Monmouth Memorial Hospital, 116 N.J.L. *139 118 (E. & A. 1936); Simmons v. Wiley M.E. Church, 112 N.J.L. 129 (E. & A. 1934); Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup. Ct. 1932), aff'd 110 N.J.L. 509 (E. & A. 1933).
Where words in a statute have received a judicial construction, the Legislature will be deemed to have used them in the judicial sense. Commercial Trust Co. of New Jersey v. Hudson County Board of Taxation, 87 N.J.L. 179 (E. & A. 1914). Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532 (App. Div.), certif. denied 38 N.J. 305 (1962), thus construed the legislative intent in adopting L. 1958, c. 131, the source act of the statute with which we are concerned:
That the Legislature did not intend to expand, modify, or alter in any way the span of the pre-existing immunity seems apparent from the wording of the statute, * * *. Significantly, the verbiage employed closely parallels the language of the cases in which the immunity rule was enunciated. [Id., 74 N.J. Super. at 535].

* * * * * * * *
We are convinced, therefore, that the Legislature intended the language of the act to be construed in light of stare decisis to the end that status quo be preserved during the life of the statute. [Id. at 536]
Defendant would ascribe a meaning to the statutory words which is contrary to that accepted and applied by our courts. It would distort the immunity which has been seen to apply only to private charities, and attempt to tailor it to a municipal corporation operating a hospital. It simply does not fit.
Lastly, it is to be noted that defendant does not claim the total immunity provided for in Section 7 of the Act. Rather it claims (and the court below held) that it is entitled only to the limited (above $10,000) immunity pursuant to Section 8 of the Act. That applies to an entity "organized exclusively for hospital purposes." (Emphasis added). Cf. Gould v. Theresa Grotta Center, 83 N.J. Super. 169 (Law Div. 1964), aff'd 89 N.J. Super. 253 (App. Div. 1965). So much deeper the hole from which defendant must climb *140 to sustain its strained interpretation of the statute. Clearly, defendant City of Jersey City is not organized "exclusively" for hospital purposes.
If Section 8 is to be interpreted as applying to defendant municipality, then N.J.S.A. 2A:53A-7 must be construed as affording total immunity to a Board of Education because it is organized "exclusively for * * * educational purposes." Such is not the law and, indeed, so far as I know, the contention has never been made. See, Jackson v. Hankinson and Bd. of Ed. of New Shrewsbury, 51 N.J. 230, 236 (1968); Titus v. Lindberg, 49 N.J. 66, 77 (1967); and cf. Hartmann v. Maplewood School Transp. Co., 106 N.J. Super. 187 (Law Div. 1969), aff'd 109 N.J. Super. 497 (App. Div. 1970); Estelle v. Board of Ed., Red Bank, 26 N.J. Super. 9 (App. Div. 1953), modified on other grounds, 14 N.J. 256 (1954).
Therefore, I conclude that the clear language of the "limited immunity" statute, N.J.S.A. 2A:53A-8, refers only to those hospitals which were protected by "charitable immunity" before abolition of that doctrine in Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958); Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958), and Benton v. Y.M.C.A., 27 N.J. 67 (1958) (hereafter sometimes collectively referred to as "Collopy"). The statute cannot be construed as applying to a municipality operating a city hospital.

(2)

The Legislative history
It is somewhat trite to say that statutory language is to be construed in light of the occasion and necessity of the law, the mischief felt and the remedy in view. Key Agency v. Continental Cas. Co., 31 N.J. 98 (1959). Collopy, Dalton and Benton, supra, were all decided on April 28, 1958. One week later, S. 204 was introduced on the floor of the Senate. The Assembly Committee Substitute for this bill *141 (the progeny of which eventually became N.J.S.A. 2A:53A-7, 8) restored the charitable immunity eliminated by Collopy except that, as to non-profit corporations, societies or associations organized exclusively for hospital purposes, immunity applied only where the damage exceeded $10,000. There can be no doubt that its purpose, except with respect to the "limited immunity" as to hospitals, was to overrule the decisions in Collopy, and to restore the charitable immunity which had existed theretofore. Lawlor v. Cloverleaf Memorial Park, Inc., supra; Anasiewicz v. Sacred Heart Church, supra. The inquiry then is: what kind of entity was protected by the "charitable immunity" doctrine before Collopy? Did that concept apply to municipalities operating hospitals?
Lawlor construed the same statute with which we are here concerned. But the judicial consideration was directed to the question as to whether "cemetery associations" were intended to be protected by N.J.S.A. 2A:53A-7, 8. The decision in that case closely parallels the problem confronting us, and I would follow its guidelines. The Court said:
Our study of the constitutional and legislative treatment of cemeteries within our State, along with the history and terms of N.J.S.A. 2A:53A-7, has led us to the firm belief that the Legislature never contemplated the inclusion of privately promoted nonreligious cemetery associations, such as Cloverleaf, within the highly special immunity afforded to associations "organized exclusively for religious, charitable, educational or hospital purposes." [Id. 56 N.J. at 331; emphasis added].
In reaching that conclusion, it was said:
The precise issue is whether it [a cemetery association] is an institution within the contemplation of the legislative immunity afforded, without any specific reference to cemeteries, to corporations or associations organized exclusively for "religious, charitable, educational or hospital purposes." Cf. 4 Scott, Trusts §§ 348.1, 402 (3d ed. 1967). [Id. at 332; emphasis added].
I adopt that statement as the precise issue here, subject to the simple amendment that it state "without any specific *142 reference to a municipality operating a city hospital" rather than "cemeteries" as in Lawlor.
In searching out the legislative meaning and intent in Lawlor, Justice Jacobs used several guidelines. He noted that: "Nowhere in the history of the legislative process nor in the terms of the legislation is there anything to suggest that the Legislature thought of cemetery associations or contemplated their inclusion." 56 N.J. at 336. So here, the quotation is perfectly apt, if we substitute "municipalities operating hospitals" for the phrase "cemetery associations." The Court, in Lawlor, therefore rejected defendant's contention that the Legislature "silently" contemplated to include cemeteries within the term "`charitable' associations." To that, too, I would subscribe here as to municipalities operating hospitals.
In Lawlor, it was noted that "[w]hen L. 1959, c. 90 (N.J.S.A. 2:53A-7 et seq.) was before the Legislature there was no express mention of cemeteries and they were presumably given no thought; if the Legislature had given them thought there is ample reason to believe that it would not have granted to them an immunity from tort responsibility." 56 N.J. at 338 (emphasis added). That too fits this situation. I would add that a public hearing on S. 204 was held on July 17, 1958. There was testimony by a representative of a religious conference in defense of immunity for hospitals organized and maintained under religious auspices, by representatives of the insurance industry concerning insurance premium costs as a consequence of the abolition of the immunity doctrine, and by attorneys with respect to the injustice of denying compensation to persons injured by the servants and agents of a charity. In all the 159 pages of the hearing, not a single word of testimony referred to the possibility that the proposed bill referred to anything but private charitable hospitals. Nothing was said about its possible reference to municipalities operating city hospitals.
*143 The 1958 bill was only a "stop-gap" measure since it was to take effect on July 22, 1958 and to expire June 30, 1959. Upon its expiration, a similar bill was introduced as S. 181. It was this bill which ultimately became N.J.S.A. 2A:53A-7, 8. While it was before the Legislature, the Attorney General submitted a memorandum to the Governor. It described the bill solely in relation to private charities, citing cases in that category, viz., Kolb v. Monmouth Memorial Hospital; Simmons v. Wiley M.E. Church; Dalton; Collopy and Benton, all supra. It stated that the bill would almost completely overrule the decisions in the Collopy trilogy. Nothing was said about hospitals run by governmental authorities. One question in the memorandum read: "Does the bill involve any state, county or municipal expenditures?" The answer was simply "No." Memorandum from Att'y Gen. Furman to Gov. Meyner, dated June 8, 1959, obtained from the Office of Counsel to the Governor. It is not unreasonable to infer that, if the bill intended to "protect" municipalities from liability in excess of $10,000, with consequent savings to them, but did impose liability upon them up to $10,000, there would have been some comment to that effect. There was none.
Finally, we have the recently enacted New Jersey Tort Claims Act, L. 1972, c. 45 (N.J.S.A. 59:1-1 et seq.). It was enacted after exhaustive study embodied in a document known as "The Kugler Report" (Report of the Attorney General's Task Force on Sovereign Immunity (May, 1972)). See, Sovereign Immunity, The Kugler Plan, 95 N.J.L.J. 545 (1972). The Report was prepared pursuant to L. 1967, c. 20 (N.J.S.A. 52:17B-4.1). See, Willis v. Department of Cons. & Ec. Dev., 55 N.J. 534, 538 (1970) It thoroughly examined all phases of governmental immunity in New Jersey. Yet, neither the Report nor the Tort Claims Act mentions N.J.S.A. 2A:53A-8, or the possibility of that statute applying to a municipality operating a hospital  this, despite the fact that the Tort Claims Act imposes liability on a public entity for negligence of its employees (N.J. *144 S.A. 59:2-2), with certain exceptions set forth in the Act, and despite the fact that there is specific treatment of liability for hospital activities in Chapter 6 of the Act (N.J.S.A. 59:6-1 to 7). Further, the Attorney General's Task Force, in preparing its report, considered possible limited immunity for public bodies. Report, op. cit., at 17. Again, there was no mention of the specific "limited" immunity statute here under consideration. Moreover, the liability established by the Act is without limitation as to amount.
If N.J.S.A. 2A:53A-8 is to be construed so as to apply to a municipality, it is directly in conflict with the Tort Claims Act insofar as the latter provides for unlimited municipal liability. If the Legislature had considered the "limited" immunity statute to be applicable to municipalities, it would have expressly repealed it. As the Court said in Henninger v. Board of Chosen Freeholders of County of Bergen, 3 N.J. 68 (1949): "Repeals by implication are not favored in the law. In the absence of an express repealer indication of an intention of the Legislature to repeal a prior act must be clear and compelling. There is a strong presumption against such an intention." Id. at 71; see also, Brewer v. Porch, 53 N.J. 167 (1969); Loboda v. Clark Tp., 40 N.J. 424 (1963). Clearly, neither the Task Force nor the Legislature considered the subject statute as applicable to municipalities.
There is nothing in the legislative history of N.J.S.A. 2A:53A-8 which suggests that it was intended to apply to governmental bodies maintaining public hospitals.

(3)

Do the policy reasons which justified "charitable immunity" at common law suit a municipal corporation operating a hospital so that such an immunity should now be bestowed upon that municipality in construing this legislation?
The reasons for cloaking private charities with immunity before Collopy were mainly to protect the trust funds of such *145 charities from serious dissipation by reason of adverse judgments against them[1] and to avoid diversion of their benefactors' contributions from the purpose for which they were made. Cf. Collopy, supra, 27 N.J. at 38-39 and the dissent of Justice Heher at 54-55; IV Scott, The Law of Trusts (3d ed. 1967) § 403.
Those reasons for protecting a private charity are not applicable to a municipality conducting a hospital. In such instances there are no trust funds created by contributions from private sources. The likelihood of depletion of the municipality's funds to the devastating degree that conceivably might befall private charities is not present, for the statute under which a city hospital is organized (N.J.S.A. 30:9-1 et seq.) provides that there shall be no depletion and that the maintenance of the hospital shall be funded from the annual tax levy of the city. In the instance of such a judgment against a municipality (again excluding consideration of insurance), the burden and risk would be spread among all the taxpayers of the community. In the interest of justice, the concept of "spreading the risk" is now a favorite inducement to avoiding immunity and expanding liability. See, Cloyes v. Delaware Tp., 23 N.J. 324, 328 (1957); Prosser, Law of Torts (3d ed. 1964), Ch. 1, § 5, p. 22; see also, President and Dir. of Georgetown College v. Hughes, 76 U.S. App. D.C. 123, 130 F.2d 810 (D.C. Cir.1942) (aff'g 33 F. Supp. 867 (D.D.C. 1940)).
The policy reasons inspiring charitable immunity at common law have no application to a municipality operating a hospital.

(4)

The general policy against immunity, to the end that injured persons shall not be uncompensated thereby, in construing this statute.
*146 There is no doubt that the judicial trend is to expand the liability of public bodies for tortious injuries and that the concept of immunity is in disfavor. Willis v. Department of Cons. & Ec. Dev., supra; Taylor v. New Jersey Highway Authority, 22 N.J. 454, 470 (1956); 18 McQuillan, Municipal Corporations (3d ed. rev. 1963) § 53.24a, pp. 180, 181.[2] In the interpretation of statutes there is a similar policy opposed to sovereign immunity. 3 Sutherland, Statutory Construction (3d ed. (Horack) 1943), § 6306, p. 195, citing Borchard, Governmental Liability in Tort, 34 Yale L.J. 1 (1924). That concept should not be ignored in the interpretation of this statute.
Collopy noted that charitable immunity is overwhelmingly opposed by professional and student writers (27 N.J. at 35), and Justice Jacobs concluded that immunity "* * * runs counter to widespread principles which fairly impose liability on those who wrongfully and negligently injure others; it operates harshly and disregards modern concepts of justice and fair dealing * * *." Id. at 47-48.
It is in the light of that policy that N.J.S.A. 2A:53A-8 should be construed. Unless it clearly grants immunity to defendant municipality, it should not be construed to do so.

(5)

The express treatment of immunity by the Legislature when it has intended that it apply.
When the Legislature has intended that a governmental body should be immune, it has clearly and expressly said so. *147 Cf. N.J.S.A. 40:9-2 with respect to the use of municipal and county public grounds, buildings and structures, N.J.S.A. 18A:20-35 concerning use of school property, and N.J.S.A. 40:60-25.5 granting immunity under certain conditions with respect to operation of public parking areas. See, Cloyes v. Delaware Tp., supra, 23 N.J. at 331-332. On the other hand, N.J.S.A. 30:9-16 provides that a municipality which operates and maintains a hospital thereunder "shall and may sue and be sued in all courts and elsewhere, in all manner of actions, suits, complaints and demands whatsoever growing out of the creation and maintenance of such hospital." Such a provision, authorizing suit against a public body, has been held to be indicative of an intent to avoid immunity and to authorize liability against it. Willis, supra; Goldberg v. Housing Authority of Newark, 70 N.J. Super. 245, 252 (App. Div. 1961), rev'd on other grounds 38 N.J. 578 (1962); Taylor v. New Jersey Highway Authority, supra, 22 N.J. at 467, 470; see also Report, op. cit., at 34, to the effect that such a provision permitting suit against a public entity constitutes a waiver of immunity. And such is the modern tendency. See Prosser, op. cit., § 125, p. 1003; but see Kress v. Newark, supra, 8 N.J. at 573. If it had been the intention of the Legislature to afford limited charitable immunity under N.J.S.A. 2A:53A-8 et seq. to a municipality, it seems incontrovertible that it would have clearly so provided, especially when, in the basic legislation, it had provided that such a municipality could be "sued in all courts * * *," etc. Failure to do so suggests that such immunity was not intended.

(6)

The relevant judicial decisions.
As we have seen, defendant's principal reliance for the application of the limited immunity statute to a city hospital is on Muntz v. Newark City Hospital, supra (115 *148 N.J. Super. 275 (App. Div. 1971)), and Tramutola v. Bortone, supra (118 N.J. Super. 503 (App. Div.), certif. granted 60 N J. 513 (1972)).
The question of the application of the statute was not in issue in Muntz. It had been "stipulated out" of the case. In the pretrial order, there was a stipulation that the "hospital's" [sic] liability was limited to $10,000 pursuant to N.J.S.A. 2A:53A-8. Further, after a verdict in the amount of $35,000, defense counsel moved to reduce the verdict to $10,000 in accordance with the stipulation. Plaintiff's attorney was asked whether he objected to the motion and he said, "No, your Honor. I might add that the pretrial order does reflect that there was an admission that the hospital was, in fact, a non-profit institution." 115 N.J. Super. at 275. The court said that "the pretrial order charted the course of the trial, and the stipulations contained therein, not having been amended, are dispositive of this appeal." Id. at 277. Therefore, analysis, in depth, as to the statute's applicability to the City of Newark was not necessary, nor was it undertaken. Nevertheless, the court went on to discuss plaintiff's contention (made on appeal) that "the hospital" did not fall within the limited immunity statute, and it held to the contrary. In Muntz, the sole support for that proposition was reference to Kress v. Newark and Kent v. County of Hudson, both supra, "wherein," it is said in Muntz, "it is clearly inferrible that the statute applies to a county hospital." 115 N.J. Super. at 277. I respectfully disagree.
It is true that, in the Appellate Division on the first appeal in Kress v. Newark (9 N.J. Super. 70 (App. Div. 1950)), the court considered the contention of defendant City that it was not liable because it was a "charitable institution." The Appellate Division assumed that the public hospital involved was a "charitable institution," but denied immunity based upon the exception to the general rule; i.e., that plaintiff was not a "beneficiary" of the institution, but rather a "stranger," one "* * * unconcerned in and unrelated *149 to that which the donor brought into being or supports in operation." Id. at 77. Therefore, there was no necessity for reaching the question as to whether, in fact and in law, the city was such a non-profit charitable entity as to be immune within the concepts of charitable immunity, for even if it was not, there still was no liability to plaintiff. Nor had any New Jersey case prior to the Appellate Division decision in Kress stated that a municipality or county was within the concept of such immunity, even though operation of such hospitals was first authorized as far back as L. 1883, c. 44.
After remand and retrial, wherein the jury awarded the plaintiff a verdict of $9,000 in Kress, the defendant again appealed and the Supreme Court took jurisdiction on its own motion. 8 N.J. 562 (1952). In that Court, there was no mention of "charitable immunity." The sole immunity considered was "governmental," with the decision hinging on the question whether the city's operation of the hospital was a governmental or a proprietary function. Therefore, the Supreme Court decision in Kress is no authority for the proposition that the doctrine of "charitable" immunity applied to a city operating a hospital.
The citation to Kent v. County of Hudson, supra, in Muntz, and the particular reference to N.J.S.A. 2A:53A-8 in that case at 219-220 of 102 N.J. Super., affords no support whatever for the proposition that the limited immunity statute applies to the county hospital there involved. The issue of charitable immunity was not in the Kent case at the time of the Appellate Division decision referred to. That defense had not been raised by the defendant in its answer, and was not an issue stated in ¶ 7 of the pretrial order of August 20, 1965.[3] There again, the only immunity alleged was "governmental." The issue of charitable immunity was not raised at the trial court level, nor was it argued in the *150 briefs before the Appellate Division. Needless to say, there was no analysis by the Appellate Division of the question as to whether or not the county came within the statutory immunity. Therefore, the comment in Kent with reference to the limited immunity statute was pure dictum.
Since Tramutola relied solely on Muntz, and Muntz in turn relied on Kress and Kent, the strength of defendant's argument is dissipated when the transparency of its reliance on Muntz, Kress, and Kent is exposed.
In Lawlor v. Cloverleaf Memorial Park, Inc., supra, the Supreme Court, seeking an answer as to whether N.J.S.A. 2A:53A-7 applied to cemetery associations, considered the absence of judicial decisions supporting such applicability as significant in construing the statute. The Court also noted that there had been cases wherein the defense of immunity had not even been raised by defendant cemetery associations and that this tended to indicate that the immunity statute did not apply to such associations. 56 N.J. at 335. So, too, in the background of the question before us, Renrick v. Newark, 74 N.J. Super. 200 (App. Div.) certif. denied 38 N.J. 309 (1962), and Terhune v. Margaret Hague Mat. Hosp., 63 N.J. Super. 106 (App. Div. 1960), involved negligence claims for injuries arising out of the operation of public hospitals, but in neither case was the defense of immunity under N.J.S.A. 2A:53A-8 even raised.
It may be argued by defendant, as it was in Tramutola v. Bortone, supra, that the decision which first recognized charitable immunity in New Jersey, D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925), was partly based upon two Massachusetts cases, McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. Rep. 529 (1876), and Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 126 N.E. 392 (1920), and that the defendants in those cases were "public hospitals" as to which charitable immunity was recognized. Therefore, it was argued in Tramutola, D'Amato implicitly recognized that charitable immunity may be afforded to public hospitals.
*151 An examination of McDonald and Roosen, however, indicates that neither defendant in those cases was a governmental body, as here. Rather, both were entities incorporated under the Massachusetts statutes. They were "public charities." But it will be seen that the defendants were not, as here, supported solely by public funds. In McDonald, it was said that the funds of the corporation had been derived from "grants, devises, donations, bequests and subscriptions of money and other property contributed by the commonwealth and benevolent persons * * *." 21 Am. Rep. at 531. It was likewise held that its funds were derived "mainly from public and private charity * * *" and that all sums obtained were held "* * * upon the same trust as those which are the gifts of pure benevolence." Id. at 531-532. (Emphasis added). Lastly, it was held in McDonald, that the defendant "has no funds which can be charged with any judgment which he [plaintiff] might recover, except those which are held subject to the trust of maintaining the hospital." Id. at 532.
In Roosen, it was stated that the basic ground for immunity in McDonald was the latter provision; i.e., that the defendant charitable corporation had no funds which could be charged with any judgment which plaintiff might recover; and it was further pointed out that the principle of McDonald was affirmed in Benton v. Boston City Hospital, 140 Mass. 13, 1 N.E. 836 (1885), but that there the affirmance went on the ground of governmental immunity. However, it must be recognized that the opinion in Roosen accorded no discussion to the ownership or financial structure of defendant hospital.
It will thus be seen that the defendant hospital corporations in McDonald and Roosen were dependent, at least in substantial part, upon private donations, and that the funds so held were held in trust for the purposes for which the contributions were made. Therefore, the same reasons which, prior to Collopy, supported the concept of "private charitable immunity" in New Jersey, were equally applicable to the *152 hospital corporation defendants in the Massachusetts cases. Not so here, with respect to a municipality operating a hospital when none of the funds used for its maintenance are obtained from private sources.
Therefore, I consider that there is no judicial support in New Jersey for the contention that N.J.S.A. 2A:53A-8 applies to a municipality operating a city hospital.
I recognize that there are older decisions in other states, holding a municipality immune in operating a city hospital. Annot., Immunity from liability for damages of state or governmental unit or agency in operating hospital, 25 A.L.R.2d 203 (1952). Section 5 of the Annotation purports to collect cases conferring "charitable immunity" upon governmental bodies operating "Hospital[s] as charitable institution[s]." Examination of the cases, however, shows that many of their holdings confused "charitable" with "governmental" immunity and subsumed the former under the latter's broad scope.[4] It is also to be noted that all of the cases stem from an era in which sovereign immunity enjoyed a status far more favored than it does today.[5]
Thus it is seen that these cases are of minimal persuasive value in an evaluation of N.J.S.A. 2A:53A-7, 8, which concerns itself solely with charitable  not governmental  immunity.
On the other hand, the issue as to whether the instant statute *153 applies to a governmental body operating a hospital was squarely raised in Taylor v. United States, 233 F. Supp. 1008 (D.N.J. 1964). There, a suit was brought against the United States for damages sustained by the decedent before his death, alleged to have resulted from malpractice at the United States Veterans Out-Patient Clinic in Newark. The government raised the defense that damages should be limited to $10,000, pursuant to N.J.S.A. 2A:53A-8. As the court said, this contention "pose[d] the question whether the United States, or its agency, the Veterans' Administration, is a `nonprofit corporation, society or association organized exclusively for hospital purposes' as that phrase is used in N.J.S. 2A:53A-8, N.J.S.A." Id. at 1010. The court held that the statutory immunity was not applicable to the United States. It said:
Neither the United States of America nor its agency, the Veterans' Administration may be construed as a nonprofit corporation organized exclusively for hospital purposes. * * * Therefore, the $10,000 limitation upon the recoverable damages prescribed by N.J.S. 2A:53A-8, N.J.S.A. is inapplicable to the United States Veterans' Administration hospital or clinic. [Id. at 1011].
To the same effect, but not related to this specific statute, see also Fulmer v. United States, supra; and see Grigalauskas v. United States, 103 F. Supp. 543 (D. Mass. 1951), aff'd 195 F.2d 494 (1st Cir.1952), holding that the United States was not immune from liability for the negligence of its employees in an Army Hospital located in Kansas, because such a hospital was not a "charitable institution" which would be immune under the applicable Kansas law.
In Gould v. Theresa Grotta Center, supra (83 N.J. Super. 169), the court held that the limited immunity of § 8, which the defendant City claims here, is available only to an entity which is organized "exclusively" for hospital purposes. Obviously, such exclusivity of purpose does not apply to the defendant City of Jersey City.
*154 Then there is Lawlor v. Cloverleaf Memorial Park, Inc., supra. All of the avenues of statutory construction there laid out and leading to the Legislature's intent to exclude cemetery associations from the statutory immunity, likewise inexorably direct us to the conclusion that it was not the intent to afford to a municipality operating a hospital that "highly special immunity afforded to associations `organized exclusively for religious, charitable, educational or hospital purposes.'" 56 N.J. at 331.
Finally, there is the philosophy of Collopy that:
* * * the law's emphasis generally is on liability, rather than immunity, for wrongdoing, and that, in particular, the modern tendency of the law is to shift the burden from the innocent victim to the community at large, and to distribute losses incurred by individuals through the operation of an enterprise among all who benefit by it rather than to leave them wholly to be borne by those who sustained them. [27 N.J. at 41, quoting from Annot., Immunity of nongovernmental charity from liability for damages in tort, 25 A.L.R.2d 29, 59 (1952)].
Is there a better case for application of that policy than this? It presents a graphic example of the injustice which would be done to this plaintiff if the serious injuries which he has suffered, found to be caused by the fault of the defendant and its agents, assessed by the jury at a value of $60,000, were to go uncompensated except for $10,000. I believe that the modern tendency "to shift the burden from the innocent victim to the community at large," should be the policy applied in construing this statute here, especially since, to say the least, the immunity argued for has not been clearly granted by the Legislature.
Accordingly, I would modify the judgment below insofar as it applies N.J.S.A. 2A:53-8 to defendant municipality, and direct that judgment be entered in favor of plaintiff William Winters in the amount of $45,000, and in favor of plaintiff Alice Winters in the amount of $15,000, both against defendant City of Jersey City, plus interest and costs.
NOTES
[1] The pre-Collopy decisions made no allowance for the use of insurance.
[2] See also The Attorney General's Task Force report on Sovereign Immunity, op. cit., at 7, wherein it is said:

It is time for the reasonable abolition of sovereign immunity in the State of New Jersey. Throughout other jurisdictions there has been an increasing and steady movement away from immunity. The growing recognition that the basic unfairness of the State's refusal to permit itself to be sued when its actions result in injury to innocent third parties has become an impelling force for change.
[3] The defense was made an issue in the second pretrial, October 31, 1969  after the decision of the Appellate Division on July 25, 1968.
[4] The rationale was that: (a) to operate a hospital not for profit and for the public health is "charitable," and (b) to protect the public health in so doing is a governmental function to which "governmental immunity" is applicable.
[5] In California, to cite one example, the concept of governmental immunity has been entirely repudiated. Muskopf v. Corning Hospital District, 55 Cal.2d 211, 359 P.2d 457, 11 Cal. Rptr. 89 (1961). In New Jersey, by comparison, the doctrine has fallen into disrepute and it is the concensus that "* * * municipal liability should be subject to less restrictive limits." B.W. King, Inc. v. West New York, 49 N.J. 318, 324 (1967). And see our recent "New Jersey Tort Claims Act," supra.