IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL
OF GERARD ARANEO, DECEASED.

Superior Court of New Jersey
Law Division Probate Part
Hudson County

Decided August 26, 1985.

*John T. Coyle* for proponent (*Coyle & VanDorn,* attorneys).

*John Sheehy* for contestant (*Sheehy & Sheehy,* attorneys).

WEFING, J.S.C.

This case raises a matter of apparent first impression in New Jersey, the construction of *N.J.S.A.* 3B:5–16(b). This statute provides:

> If at the time of execution of the will the testator fails to provide in his will for a living child solely because he believes the child to be dead, the child receives a share in the estate equal in value to that which he would have received if the testator had died intestate.

The issue arises in the following context. Gerard Araneo died intestate on November 5, 1984, a resident of Hudson County. His will, which was executed on March 2, 1981, bequeathed his entire estate to his nieces Alycia Craft and Helene Ackerman. The will itself was typed on a blank will form and it contained no indication whatever on its face that the decedent had any children.

The suit was brought by Gerard Araneo's two daughters, Constance Iscaro and Marilyn Anderson who, in reliance on the above statute, seek to overturn the judgment of the surrogate admitting this will to probate. Gerard Araneo was married at one point to Virginia Araneo and two children, plaintiffs herein,

were born of this marriage. In or about 1950, Mrs. Araneo packed up the two children and moved out-of-state with a new companion. She relocated in Idaho and eventually settled in Illinois. At the time of this move Constance was eight- or nine-years of age and Marilyn four or five. Mr. Araneo did, at least while the girls were in Idaho, forward child support payments but these eventually ceased completely. The girls' mother led them to understand that their father was dead and they had no contact with him at all from the time of the original move from New Jersey until August 1984. Mrs. Araneo at some point married one Iscaro and changed the children's names; they were, however never adopted. She later divorced Iscaro and married another individual.

Plaintiffs remembered having lived in New Jersey as children and in the summer of 1984 began to try to locate relatives here. After a series of phone calls, in August they contacted Michael Araneo, brother of Gerard. After expressing shock at hearing from them, he told plaintiffs that their father was a patient in St. Francis Hospital in Jersey City.

The two women drove to New Jersey from Illinois that weekend and visited Mr. Araneo in the hospital. When they first entered his room he did not recognize them and told them they were in the wrong room. When they identified themselves he expressed great shock and said, "My God, I thought you disappeared off the face of the earth." The women visited with him at length over the weekend, filling in what happened to them in the years since 1950. It is evident from a nine-page letter written by plaintiff Connie Iscaro to Michael Araneo sometime after the visit, that the reunion did not provide the emotional comfort and solace that she and her sister had sought.

During this visit the women invited Mr. Araneo to move to Illinois to live with them and he expressed the desire that they all live together in their old residence in Dumont. However, unbeknownst to either Gerard Araneo or his daughters, he had

cancer and his doctors' prognosis was that he had only several months to live. The doctors had communicated this to Michael Araneo, but he, in turn, did not disclose it to his brother or his nieces.

Plaintiffs returned to Illinois, planning another visit at Thanksgiving. They did not, however, see their father again for he died on November 5, 1984. Because he refused to have a telephone in his room at the hospital they were also unable to call him after their departure. (The testimony was unrefuted that for some years Mr. Araneo would not have a phone at his residence, saying he would only be contacted by people seeking money from him.)

No proof was presented by either side about the circumstances surrounding the preparation and execution of the questioned will. The only proof presented on the issue of whether Mr. Araneo had believed his daughters were dead was a statement by Connie Iscaro that her father told one of the nurses in the hospital that he had believed them dead. His references to other nurses, however, described his daughters as being "long lost" and expressed his belief that they had disappeared. None of the nurses on duty during any of these visits testified.

Michael Araneo testified that Gerard was despondent after his family left and that he never really discussed that situation with Gerard because it seemed to cause him pain. According to Michael, Gerard never expressed any views on whether his daughters were living or dead. Michael also testified that following the visit in August he saw Gerard in September and asked whether he wanted to make any changes in his will and that Gerard said no. I do not attach great credence to Mr. Araneo's testimony. His credibility was subject to severe challenge by his conduct in submitting to the court an incomplete copy of Mrs. Iscaro's letter to him as an attachment to his affidavit of February 26, 1985 in opposition to the original order to show cause; not only was the attachment incomplete, he signed the letter as if it had been signed by the author. It is

also significant that he is executor under the challenged will and that if this challenge is successful, it would be to the detriment of Michael's daughters, the will's sole beneficiaries.

■ It is clear that the burden of proof on the issue of whether decedent's daughters are entitled to share in his estate rests with them. The statute itself provides no guidance whether plaintiffs' burden is to establish their entitlement by a preponderance of the credible evidence or by clear and convincing proof.

*N.J.S.A.* 2A:81–2 provides that a party to a civil action who asserts a claim against one acting in a representative capacity (as is Michael Araneo) "supported by oral testimony of a promise, a statement or act ... of the decedent, shall be required to establish the same by clear and convincing proof." Although there is some authority that a challenge to a will may prevail if a contestant produces a preponderance of the credible evidence, *In re Shimer's Will,* 103 *A.* 383 (Prerog.Ct.1918), the better reasoned cases require clear and convincing proof to establish incapacitating insane delusions, *e.g., In re Hoover,* 21 *N.J.Super.* 323 (App.Div.1952), the existence of undue influence, *e.g., In re Davis,* 14 *N.J.* 166, 169 (1953) or to rebut a presumption of undue influence created by a professional conflict of interest on the part of the scrivener combined with a confidential relationship between testator and beneficiary. *Haynes v. First Nat'l State Bk. of N.J.,* 87 *N.J.* 163, 183 (1981). The policy underlying the statute and these cases is the recognition that a court is dealing with evidence that is potentially unreliable. *Id.* at 183, n. 6. I am satisfied that that policy places the burden upon plaintiffs to establish the facts underlying their claim by clear and convincing proof.

Clear and convincing evidence is "that which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re Boardwalk Regency Casino License Application,* 180 *N.J.Super.* 324, 399 (App.Div.1981).

*N.J.S.A.* 3B:5–16(b) speaks of a testator omitting a living child *"solely"* (emphasis supplied) because the testator believes that child to be dead. While Mr. Araneo *may* have thought his daughters deceased, the evidence submitted equally supports an inference of a man who considered himself abandoned by his family and was content to let matters remain in that posture.

It is also appropriate to consider circumstances subsequent to the execution of the document to determine if it was impelled by a belief that his children were deceased. Here Mr. Araneo lived almost three months after his reunion with his daughters and there is nothing to indicate that he ever considered revising his will to include them as beneficiaries.

I cannot view Mr. Araneo's statement that he believed his daughters "disappeared off the face of the earth" as proof that he believed them deceased. It is equally probable that he believed that as the girls grew, they also determined to abandon him, as had his wife. It is important to keep clear that it is irrelevant that the girls may have thought Mr. Araneo was dead prior to the reunion of August 1984; it is the testator's belief which triggers the statute, not that of the omitted child.

█ It is undoubtedly a human tragedy that father and daughters were, through the acts of another person, separated for more than 30 years. This court cannot, however, undo that fact or redistribute decedent's estate to attempt to make up to plaintiffs for their loss over these years. A court cannot pass upon either the wisdom or fairness of a will's provisions so long as it was validly executed and it is not illegal or offensive to public policy. *In re Blake's Will,* 21 *N.J.* 50, 57 (1956); *In re Petkos,* 54 *N.J.Super.* 118, 128 (App.Div.1959).

█ The word "solely" has been defined to mean entirely or exclusively. *The American Heritage Dictionary* (2 ed. 1982). Our courts have treated the words sole and exclusive as equivalent in meaning. *Kirby v. Columbian Institute,* 101 *N.J.Super.* 205 (Cty.Ct.1968). There is nothing within the statute which would indicate that the word solely should receive any less

restrictive interpretation by this court. Indeed, to do otherwise would fly in the clear language of the statute. "Where the wording of a statute is clear and explicit, the court is not permitted to indulge in any interpretation other than that called for by the express words set forth." *Winters v. City of Jersey City,* 120 *N.J.Super.* 129, 137 (dissenting opinion), mod. on dissent 63 *N.J.* 7 (1973).

I am satisfied that plaintiffs failed to prove that Gerard Araneo believed his daughters were dead and that that belief was the sole cause of the terms of his will executed on March 2, 1981.

Counsel will please submit an appropriate form of judgment discharging the order to show cause.